**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., New York Power Authority, Niagara Mohawk Power Corporation, Rochester Gas and Electric Corporation, Arizona Public Service Corporation, Commonwealth Edison Company, Duke Energy Corporation, Entergy Gulf States,**

Inc., Florida Power Corporation, Florida Power and Light Company, GPU Nuclear, Inc. (on behalf of Jersey Central Power & Light Company, Metropolitan Edison Company, and Pennsylvania Electric Company), Indiana Michigan Power Company, Nebraska Public Power District, PECO Energy Company, Southern California Edison Company, Southern Nuclear Operating Company, Inc., System Fuels, Inc., Texas Utilities Electric Company, Virginia Electric & Power Company, Washington Public Power Supply System, Wisconsin Public Service Corporation, and Wolf Creek Nuclear Operating Corporation (on behalf of Kansas City Power & Light Company, Kansas Electric Power Cooperative, Inc., and Kansas Gas and Electric Company), Plaintiffs–Appellees,

v.

UNITED STATES, DEPARTMENT OF ENERGY, Department of Energy as Successor to the United States Atomic Energy Commission, and Energy Research and Development Administration, Defendants–Appellants.

No. 99–1464.

United States Court of Appeals, Federal Circuit.

May 3, 2001.

Daniel R. Murdock, Winston & Strawn, of New York, NY, for plaintiffs-appellees.

Mark W. Pennak, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, for defendants-appellant. With him on the brief was Barbara C. Biddle.

Melvin C. Garbow, Arnold & Porter, of Washington, DC, for amicus curiae Sacramento Municipal Utility District. With him on the brief was Howard N. Cayne.

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge,* and GAJARSA, Circuit Judge.

RADER, Circuit Judge.

Consolidated Edison Company of New York and twenty-one other nuclear utilities (collectively, Con Ed) sued the United States, the Department of Energy, and the Energy Research and Development Administration in the United States District Court for the Southern District of New York seeking declaratory judgments and injunctive relief. *Consol. Edison Co. of N.Y. v. United States,* 45 F.Supp.2d 331 (S.D.N.Y.1999). Con Ed's suit challenged the constitutionality of the Energy Policy Act of 1992 (EPACT), 42 U.S.C. § 2297g (1994), on due process and takings grounds. The district court denied the Government's motion to transfer the case to the United States Court of Federal Claims, or alternatively, to dismiss.

On December 5, 2000, this court affirmed the district court's decision to deny the Government's motion. The Government filed a suggestion that this court rehear that December 5 decision *en banc.* This court unanimously accepted the petition. Accordingly, this court, acting *en banc,* vacated the judgment of this court entered on December 5, 2000, and reported at 234 F.3d 642 (Fed.Cir.2000). The *en banc* court then reassigned the opinion to the panel for revision. Because the Court of Federal Claims can offer an adequate remedy in this case, this court now reverses and remands.

I.

Con Ed sued the Government, challenging the constitutionality of EPACT. Before EPACT, Con Ed contracted with the Government for uranium enrichment ser-

* Judge Plager assumed senior status on November 30, 2000.

vices under a series of fixed-price agreements. After enactment of EPACT in 1992, the Government began decontaminating and decommissioning several of its uranium processing facilities. EPACT stipulated that the Government would pay sixty-eight percent of the decontamination and decommissioning costs; annual assessments on domestic nuclear utilities would supply the remaining thirty-two percent. EPACT made the Department of Energy responsible for computing each utility's share of the assessment in proportion to that utility's use of Government enrichment services in the past. 42 U.S.C. § 2297g 1(c) (1994) (amended 1998).

After making initial payments under EPACT, Con Ed, and other nuclear utilities not parties to this suit, sued the Government in the Court of Federal Claims seeking refunds of those payments. The lawsuits before the Court of Federal Claims asserted many of the same constitutional grounds as this lawsuit. In one such case, this court reversed the Court of Federal Claims' grant of summary judgment in favor of a nuclear utility, concluding that collection of the assessments under EPACT did not violate the utility's contract under which it had purchased the enriched uranium from the government, nor constituted a taking of the utility's contract rights. *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569 (Fed.Cir. 1997), *cert. denied*, 524 U.S. 951, 118 S.Ct. 2365, 141 L.Ed.2d 735 (1998).

After several subsequent nuclear utility losses in the Court of Federal Claims, Con Ed filed this suit in the district court. Instead of seeking refunds of assessments, however, Con Ed sought a declaratory judgment that EPACT was unconstitutional on several grounds and an injunction on enforcement of the EPACT assessments. By taking this procedural posture, Con Ed sought a hearing in another forum. To achieve this objective, Con Ed drew its complaint to avoid prayers for relief actionable in the Court of Federal Claims, such as claims against the United States for money damages. *See* 5 U.S.C. § 702 (1994).

The Government moved the district court to transfer this case to the Court of Federal Claims, where other nuclear utility cases await disposition. The Government contended that Con Ed's suit in the district court under the Administrative Procedure Act (APA) amounts to impermissible forum shopping. The APA, according to the Government, does not waive sovereign immunity from this suit in the district court because Con Ed can obtain full legal relief, if successful, in the Court of Federal Claims. Specifically, the Government noted that the Court of Federal Claims has, on occasion, asserted power under the Tucker Act to order a full refund of illegally exacted funds. *See* 28 U.S.C. § 1491(a)(1) (1994); *New York Life Ins. Co. v. United States*, 118 F.3d 1553 (Fed.Cir.1997). Thus, if Con Ed can show illegal exaction of EPACT assessments, the Government maintained, the Court of Federal Claims may have authority to order a refund. Lawsuits seeking that remedy were already pending in the Court of Federal Claims.

The Government discounted potential restrictions on the Court of Federal Claims' power to order injunctive or other prospective relief. If the EPACT assessments in fact violate constitutional guarantees, the Government asserted, injunctive relief would not be necessary. Rather, *res judicata* would bar the Government from future assessments against Con Ed under EPACT in the face of a Court of Federal Claims illegal exaction judgment. In addition, the Government assured that it would not attempt to make future assessments after a loss in the Court of Federal Claims.

In the face of these arguments, the district court denied the Government's motion. The district court cited cases from the United States Court of Appeals for the Second Circuit and the United States Supreme Court to confirm that the APA waives the sovereign immunity of the United States for suits that properly invoke equitable relief from agency action. *Bowen v. Massachusetts,* 487 U.S. 879, 904, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *In re Chateaugay Corp.,* 53 F.3d 478, 493 (2d Cir.1995). After denying the Government's motion, the district court certified the jurisdictional question for interlocutory review. This court has exclusive jurisdiction to hear the appeal under 28 U.S.C. § 1292(d)(4)(A) (1994).

## II.

■ The sole question in this case is whether the APA waives sovereign immunity for an action in a district court on the merits of Con Ed's claim because Con Ed seeks declaratory and prospective injunctive relief, rather than a refund of EPACT payments. This court reviews legal questions, such as jurisdiction and authority of the Court of Federal Claims and the district court, without deference. *Terran v. Sec'y of Health & Human Servs.,* 195 F.3d 1302, 1309 (Fed.Cir.1999).

■ To invoke the jurisdiction of a federal court for relief from monetary obligations imposed by a federal agency, a litigant must show that the United States has waived its sovereign immunity. *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed.Cir. 1994) (citing *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("The terms of [the sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit.")). The Supreme Court has explained that a litigant may invoke the APA as a waiver of sovereign immunity, thereby invoking district court jurisdiction, if the litigant can satisfy both 5 U.S.C. § 702 (by requesting "relief other than money damages") and 5 U.S.C. § 704 (1994) (no "adequate remedy" is available elsewhere, such as the Court of Federal Claims). *Bowen,* 487 U.S. at 892–93, 904–05, 108 S.Ct. 2722. Although Con Ed may satisfy § 702 by not seeking "money damages," jurisdiction still lies in the Court of Federal Claims because that court can provide an "adequate remedy" in this case within the meaning of § 704.

■ Under specified circumstances, the APA waives sovereign immunity for actions challenging agency actions in district court. Section 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702 (emphasis added). Thus, the APA "eliminat[es] the defense of sovereign immunity in cases covered by [§ 702]." *Bowen,* 487 U.S. at 892, 108 S.Ct. 2722.

Section 702, however, denies this sovereign immunity waiver to claims for money damages or for claims that seek remedies "expressly or impliedly" precluded by oth-

er statutes. 5 U.S.C. § 702; *Transohio Sav. Bank v. Dir., Office of Thrift Supervision,* 967 F.2d 598, 607 (D.C.Cir.1992). In *Bowen,* the Supreme Court examined this limitation on APA waivers. In that case, the Commonwealth of Massachusetts sought review of a final order of the Secretary of Health and Human Services refusing to reimburse a category of Medicaid expenses. *Bowen,* 487 U.S. at 882, 108 S.Ct. 2722. The Supreme Court set forth reasons that § 702's exclusion for money damages claims did not foreclose district court judicial review of Massachusetts' monetary claims. As explained below, however, this court need not address the § 702 limitation in this case because another limitation on APA review precludes district court review.

In addition to § 702's "money damages" limitation, § 704 of the APA further excludes from the APA's sovereign immunity waiver those claims for which adequate remedies are elsewhere available. 5 U.S.C. § 704; *Transohio,* 967 F.2d at 608. Section 704 states, in relevant part: "Agency action made reviewable by statute and final agency action for which there is *no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). In other words, a claimant with an alternative adequate remedy in another court, such as the Court of Federal Claims, cannot seek review of agency action in a district court under the APA.

Therefore, Con Ed must show that § 704 does not withdraw any waiver of sovereign immunity otherwise granted by § 702. Section 704 codifies a requirement ensuring that the general grant of review in the APA does not "duplicate existing procedures for review of agency action." *Bowen,* 487 U.S. at 903, 108 S.Ct. 2722. In effect, § 704 withdraws the limited waiver of immunity under § 702 if an adequate

judicial remedy is already available elsewhere. 5 U.S.C. § 704; *see also Kanemoto,* 41 F.3d at 644 ("[W]here agency action is otherwise reviewable in court and an adequate remedy is available in connection with that review, the APA's waiver of sovereign immunity under section 702 is not available."); *Mitchell v. United States,* 930 F.2d 893, 895–96 (Fed.Cir.1991).

As noted earlier, the district court relied on the Supreme Court's *Bowen* decision for the proposition that the Court of Federal Claims could not offer an adequate remedy in this case. *Consolidated Edison,* 45 F.Supp.2d at 336 (stating that APA has waived sovereign immunity "[b]ecause the relief sought here is disproportionately prospective and therefore equitable (as opposed to compensatory)."). *Bowen,* however, does not enunciate a broad rule that the Court of Federal Claims cannot supply an adequate remedy in any case seeking injunctive relief.

At the outset, this court notes that the Supreme Court's ruling in *Bowen* emphasized the complexity of the continuous relationship between the federal and state governments administering the Medicaid program. The Supreme Court was "not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties." *Bowen,* 487 U.S. at 905, 108 S.Ct. 2722. The Supreme Court's choice of absolute language such as "categorically" and "always" leaves room for the proposition that the Court of Federal Claims may well supply an adequate remedy in cases without a complex ongoing federal-state interface. *See, e.g., Kanemoto,* 41 F.3d at 645. Unlike the Medicaid program with its shifting populations and demographics, advancing medical technologies, unforeseeable health threats,

and varying state and federal economic conditions, the relationship between Con Ed and the United States features a known and fixed series of payments over time. For this reason, among others, *Bowen* does not enunciate the categorical rule that the district court attributed to it.

In *Bowen,* the Supreme Court gave several other reasons that the Court of Federal Claims could not supply an adequate remedy in that particular complex ongoing federal-state relationship. For instance, the Court labeled "doubtful" "the jurisdiction of the [Court of Federal Claims] to entertain the action, or perhaps even to enter a specific money judgment against the United States." *Id.* at 905, 108 S.Ct. 2722; *see also Bowen,* at 906 n. 42, 108 S.Ct. 2722. Although the Supreme Court had doubts about the Court of Federal Claims' jurisdiction over Medicaid disallowance decisions, this case presents no jurisdictional problems. The Court of Federal Claims has long possessed jurisdiction to consider constitutional claims, such as Con Ed's claims about the EPACT assessments, under the "illegal exaction" doctrine. *New York Life Ins.,* 118 F.3d at 1553; *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (Ct.Cl. 1967); *Mallow v. United States,* 161 Ct.Cl. 446 (1963). Indeed, the factual background and the constitutional claims at issue in the current litigation overlap with those already before the Court of Federal Claims. Thus, another reason for the Supreme Court's apprehensions in *Bowen* is not present in this case.

The Supreme Court further suggested in *Bowen* that "the nature of the controversies that give rise to disallowance decisions typically involve state governmental activities that a district court would be in a better position to understand and evaluate than a single tribunal headquartered in Washington." 487 U.S. at 907–08, 108

S.Ct. 2722. Unlike *Bowen,* which involved a dispute between the Commonwealth of Massachusetts and the United States, this case does not involve a state at all. This case relates to a contract between the utilities and the Government, and specifically, the utilities' financial obligations under EPACT. This case does not involve the complexities of government-to-government relationships. This case does not involve "[m]anaging the relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets." *Id.* at 904 n. 39, 108 S.Ct. 2722. In sum, this case does not "involve state governmental activities that a district court would be in a better position to understand and evaluate" than the Court of Federal Claims. *Id.* at 907–08. In *Bowen,* the Supreme Court linked its judgment to a specific set of circumstances that are not present in this case. The Supreme Court's language and reasoning in that case do not preclude the Court of Federal Claims' illegal exaction doctrine from providing an adequate remedy in the circumstances of this case.

## III.

Indeed the procedural background and facts of this case indicate that the Court of Federal Claims can supply an adequate remedy even without an explicit grant of prospective relief. Turning first to the facts of this case, Con Ed's district court complaint seeks a prospective injunction on its future payments of money under EPACT. In the event of success in its claims before the Court of Federal Claims, Con Ed will receive a refund of all payments under EPACT because the United States illegally exacted those funds. In the face of such a judgment, the United States could not proceed to assess further EPACT payments without again illegally exacting funds. *Res judicata* principles

would require immediate refund of any assessment with interest. *See Foster v. Hallco Mfg. Co., Inc.,* 947 F.2d 469, 475–76 (Fed.Cir.1991) ("The principles of law denominated '*res judicata* ' embody the public policy of putting an end to litigation."). Moreover, this court cannot imagine that the United States would continue to require the utility companies to pay unlawful exactions.

In sum, Con Ed's district court case in reality seeks only prospective monetary relief. Con Ed's case for retrospective monetary relief before the Court of Federal Claims overlaps with its claims for prospective monetary relief before the district court. Relief from its retrospective obligations will also relieve it from the same obligations prospectively. In this case, without the complexities of the ongoing federal-state relationships present in *Bowen,* a money judgment in the Court of Federal Claims will provide Con Ed with an adequate remedy against the same exactions in the future. *See, e.g., Kanemoto,* 41 F.3d at 645 ("[A] 'naked money judgment' would provide Kanemoto an adequate remedy.").

The procedural background of this case seals the conclusion that Con Ed has an adequate remedy in the Court of Federal Claims. Con Ed originally sued in the Court of Federal Claims seeking a refund of payments made under EPACT, asserting many of the same constitutional claims it asserts before the district court. After initial successes, the utility companies' cases took a turn against its position. *Yankee Atomic,* 112 F.3d at 1571. Only at that late stage of the litigation did Con Ed file this suit in district court deleting all reference to monetary recovery and instead seeking a declaratory judgment and an injunction.

■ This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims. *Veda, Inc. v. United States Dep't of Air Force,* 111 F.3d 37, 39 (6th Cir.1997) (citing *A.E. Finley Assoc., Inc. v. United States,* 898 F.2d 1165, 1167 (6th Cir.1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages.")); *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir.1990); *Eagle–Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990) (quoting *Rogers v. Ink,* 766 F.2d 430, 434 (10th Cir.1985) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.")); *see also Am. Sci. Engg., Inc. v. Califano,* 571 F.2d 58, 61–63 (1st Cir.1978); *Ala. Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1225–26 (5th Cir.1976). The circuits have consistently rebuffed such blatant forum shopping to avoid· adequate remedies in an alternative forum. *Id.*

Every legal issue that Con Ed seeks to resolve in this district court case could be (and, in some cases, has been) decided in a suit before the Court of Federal Claims. Likewise, as evidenced by the previously filed Court of Federal Claims litigations, a refund of the EPACT payments could provide an adequate remedy for Con Ed and other utilities. Moreover, a decision by the Court of Federal Claims would effectively moot any prospective relief that the district court could afford. Accordingly, the Court of Federal Claims can supply an "adequate remedy" to prevent the constitutional wrongs alleged by Con Ed. Therefore, under § 704, an adequate remedy in the Court of Federal Claims deprives Con

Ed of duplicative district court adjudication.

## CONCLUSION

Because § 704's exception for alternative adequate remedies forecloses a waiver of immunity under § 702 in this case, the district court erred in denying the Government's motion to transfer to the Court of Federal Claims. This court returns this case to the district court with directions to transfer.

## COSTS

Each party shall bear its own costs.

*REVERSED AND REMANDED.*

PLAGER, Senior Circuit Judge,[*] concurring.

This case confronts the court with a choice between a seemingly illogical Supreme Court rule, calling for a less-than-sensible result, on the one hand, or underruling the Supreme Court decision, here *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), on the other. This time the court has chosen the latter course. I cannot disagree; it remains to be seen whether the Supreme Court will.

[*] Judge Plager assumed senior status on No-

FOR THE COURT.

## *ORDER*

The Appellants filed a combined petition for rehearing and rehearing en banc. A response thereto was invited by the court, and filed by the Appellees. The petition for rehearing and response were referred to the panel that heard the appeal, and thereafter, the petition for rehearing en banc and response were referred to the circuit judges who are in regular active service. A poll having been taken, it is

ORDERED that the petition for rehearing en banc was granted; the judgment of the court entered on December 5, 2000, and reported at 234 F.3d 642 (Fed.Cir. 2000), is hereby vacated; and the opinion of the court accompanying the judgment is withdrawn.

The en banc court returned this appeal to the merits panel, who issue the revised opinion that accompanies this order.