# United States Court of Appeals for the Federal Circuit

05-1501

BOARD OF TRUSTEES OF BAY MEDICAL CENTER,
BAPTIST HOSPITAL, INC., and
THE HEALTHCARE AUTHORITY OF THE CITY OF HUNTSVILLE,

Plaintiffs-Appellees,

v.

HUMANA MILITARY HEALTHCARE SERVICES, INC.,

Defendant-Appellant,

and

OFFICE OF CIVILIAN HEALTH AND MEDICAL PROGRAM
OF THE UNIFORMED SERVICES, TRICARE MANAGEMENT ACTIVITY,
DEPARTMENT OF DEFENSE, and DONALD H. RUMSFELD, Secretary of Defense,

Defendants-Appellees.

J. Nixon Daniel, III, Beggs & Lane LLP, of Pensacola, Florida, argued for plaintiffs-appellees. With him on the brief was Russell F. Van Sickle. Of counsel was Terrie L. Didier.

Peter L. Wellington, Steptoe & Johnson LLP, of Washington, DC, argued for defendant-appellant. With him on the brief was Andrew D. Irwin. Of counsel on the brief was Charles M. Trippe, Moseley, Prichard, Parrish, Knight & Jones, of Jacksonville, Florida.

Kyle E. Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director.

Appealed from: United States District Court for the Northern District of Florida

Judge M. Casey Rodgers

# United States Court of Appeals for the Federal Circuit

05-1501

BOARD OF TRUSTEES OF BAY MEDICAL CENTER,
BAPTIST HOSPITAL, INC., and
THE HEALTHCARE AUTHORITY OF THE CITY OF HUNTSVILLE,

Plaintiffs-Appellees,

v.

HUMANA MILITARY HEALTHCARE SERVICES, INC.,
Defendant-Appellant,

and

OFFICE OF CIVILIAN HEALTH AND MEDICAL PROGRAM OF THE UNIFORMED
SERVICES, TRICARE MANAGEMENT ACTIVITY, DEPARTMENT OF DEFENSE,
and DONALD H. RUMSFELD, Secretary of Defense,

Defendants-Appellees.

_____

DECIDED: May 4, 2006

_____

Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

LOURIE, Circuit Judge.

Humana Military Healthcare Services, Inc. ("Humana") appeals from the final decision of the United States District Court for the Northern District of Florida denying its motion to dismiss or transfer its complaint to the United States Court of Federal Claims, and denying its motion for reconsideration. Bd. of Trs. of Bay Med. Ctr. v. Humana, No. 5:03-CV-144, 2004 WL 3314946 (N.D. Fla. Mar. 16, 2004) ("Transfer Decision"); Bd. of Trs. of Bay Med. Ctr. v. Humana, No. 5:03-CV-144, (N.D. Fla. July 1, 2005)

("Reconsideration Decision").  Because the contract claims brought by the Board of Trustees of Bay Medical Center, Baptist Hospital, Inc., and the Healthcare Authority of the City of Huntsville (collectively the "Hospitals") are not claims for money damages against CHAMPUS, TMA, DOD and Donald Rumsfeld (collectively the "government"), and the district court did not abuse its discretion in denying Humana's motion for reconsideration, we affirm.

BACKGROUND

This appeal relates to administrator-provider contracts for medical services under the Department of Defense ("DOD") Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), which was established in 1967.  Transfer Decision, slip op. at 2.  Before the establishment of TRICARE, the DOD used claims processors, called fiscal intermediaries, to process claims under the CHAMPUS program.  Id., slip op. at 4.  Under the fiscal intermediary ("FI") contracts, fiscal intermediaries were not legally responsible for claims that arose regarding the discharge of duties required under those contracts.  Id.  The FI contracts thus included the following indemnification clause: "In civil law suits which seek the disbursement of funds, the United States is the real party in interest since the funds disbursed are United States Treasury funds appropriated by Congress to the Department of Defense."

In 1995, the DOD established TRICARE, a managed healthcare program that involved the competitive selection of contracts to financially underwrite the delivery of healthcare services under CHAMPUS.  Id., slip op. at 2.  The program was administered through the TRICARE Management Activity ("TMA"), which was previously the Office of CHAMPUS.  Id., slip op. at 4.  Under the TRICARE system, the DOD began using

05-1501                              2

managed care support ("MCS") providers whose contracts did not contain the indemnity provisions found in the FI contracts.  Id.

On January 23, 1996, Humana and the DOD entered into an MCS contract (the "Prime Contract") whereby Humana agreed to provide managed care support services for all CHAMPUS beneficiaries residing in a particular southeastern geographical area ("Regions 3 and 4").  Id., slip op. at 3.  Humana then subcontracted with the Hospitals ("network provider contracts") to provide the healthcare services required under the Prime Contract for CHAMPUS beneficiaries residing within Regions 3 and 4.  Id., slip op. at 6.

Prior to October 1, 1999, Humana paid the Hospitals the agreed-upon amounts set forth in the network provider contracts.  Id., slip op. at 6-7.  However, beginning October 1, 1999, Humana, without prior notice, ceased paying the Hospitals the normal amount for reimbursement of outpatient non-surgical services, reducing the payments to the Hospitals by applying CHAMPUS Maximum Allowable Charge ("CMAC") rates to those services.  Id., slip op. at 7.

On June 3, 2003, the Hospitals filed suit in the United States District Court for the Northern District of Florida seeking damages for breach of the contract by Humana and a declaratory judgment against the government.  Specifically, in count I of the complaint, the Hospitals asserted that Humana's application of the CMAC rates to cap the reimbursement of out-patient non-surgical services breached the previously agreed-upon reimbursement methodology for those services in the network provider contracts.[1]

---

[1]     There are two components to an outpatient non-surgical service bill, a technical component and a professional component.  The parties agree that the services at issue

In addition, the Hospitals noted that, on March 10, 2000, approximately five months after Humana began reducing payments to the Hospitals, the TMA had issued a policy statement relating to the reimbursement of outpatient hospital services ("Policy Statement"), which approved of the application of the CMAC rates to institutional providers. In count II of the complaint, the Hospitals accordingly asserted that the Policy Statement was void because "it was in direct conflict with the reimbursement plan for those services promulgated as 34 C.F.R. § 199.14" and "it was actually an attempt to issue a substantive rule that [should have been] promulgated as a regulation." Complaint, at ¶ 28. The Hospitals also asserted that, "[r]egardless of the validity of the policy, its existence did not change or otherwise affect the contracts entered into between Humana and [the Hospitals]." Id., at ¶ 29.

On August 25, 2003, the government filed a Rule 12(b)(1) motion to dismiss the declaratory judgment claim. On the same day, Humana filed a Rule 12(b)(1) motion to dismiss the contract claims or alternatively to transfer the case to the Court of Federal Claims, asserting that the real party in interest on the Hospitals' claims was the government. On March 16, 2004, the district court granted the government's motion to dismiss based on the Hospitals' lack of standing to sue the government on the contract claims and denied Humana's motion to transfer or dismiss because the district court determined that it had subject matter jurisdiction over the breach of contract claims.

---

in this case involve only Humana's reimbursement of the technical component of the bill for radiology and laboratory fees, i.e., the fees charged by institutional providers for use of radiological and laboratory equipment. The Hospitals' contract claims do not involve the professional charges of those physicians who were involved with the delivery of the Hospitals' radiological or laboratorial services. Transfer Decision, slip op. at 7.

The Hospitals did not appeal or seek reconsideration of the ruling granting the government's motion.

On March 30, 2004, Humana filed a motion for reconsideration in the district court. Humana did not identify this motion as a Rule 59(e) Motion to Alter or Amend Judgment under the Federal Rules of Civil Procedure. Before the district court ruled on the merits of the motion for reconsideration, Humana filed a notice of appeal from the jurisdiction decision on April 15, 2004. The district court denied the motion for reconsideration as moot on April 19, 2004, because the court determined that the April 15 notice of appeal divested the court of jurisdiction.

On April 22, 2004, Humana filed a second notice of appeal incorporating both the denial of the motion to dismiss or transfer and the denial of the motion for reconsideration. Humana requested that we remand the case to the district court for review of the merits of the motion for reconsideration, or, in the alternative, that we transfer the case to the Court of Federal Claims. On January 8, 2005, we found that the district court erred in determining that the motion for reconsideration was moot and remanded for a determination of the motion on the merits. Bd. of Trs. of Bay Med. Ctr. v. Humana, 123 Fed. Appx. 995, 997 (Fed. Cir. 2005). We did not review the denial of the motion to dismiss or transfer to the Court of Federal Claims. Id. at 997-98.

After our remand, the district court denied Humana's motion for reconsideration. Bd. of Trs. of Bay Med. Ctr. v. Humana, No. 5:03-CV-144 (N.D. Fla. July 1, 2005). The court reasoned that "Humana [had] failed to present 'evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.'" Id., slip op. at 7 (quoting Summit Med. Ctr. of Alabama, Inc. v.

Riley, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). Humana timely appealed on July 29, 2005, and we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(d)(4)(A).

## DISCUSSION

This court reviews legal questions without deference. Consolidated Edison Co. of New York v. United States, 247 F.3d 1378, 1382 (Fed. Cir. 2001). Questions concerning jurisdiction and transfer to the Court of Federal Claims are also reviewed de novo. United States v. County of Cook, 170 F.3d 1084, 1087 (Fed. Cir. 1999). A denial of a motion for reconsideration by a district court is reviewed under the standard of review used by the governing regional circuit. Minton v. NASD, Inc., 336 F.3d 1373, 1378-79 (Fed. Cir. 2003). The Eleventh Circuit, the regional circuit that governs the Northern District of Florida and is relevant here, reviews the denial of a motion for reconsideration for an abuse of discretion. Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004).

On appeal, Humana argues that the government is the "real party in interest" on the Hospitals' claims because the true nature of the Hospitals' breach of contract claims is for money damages against the government under the CHAMPUS/TRICARE statutes and regulations. Humana points out that the Hospitals' complaint set forth a direct noncontractual claim against the government in their complaint – challenging the Policy Statement mandating that CMACs must be applied to institutional providers – and that the Tucker Act provides a waiver of sovereign immunity allowing the Hospitals to assert that claim in the Court of Federal Claims.

05-1501                                                          6

The Hospitals respond that the case was properly before the district court because their claim against Humana was based on private agreements between the Hospitals and Humana, and the government was not a party to those contracts. The Hospitals argue that they are not seeking, and cannot seek, money from the government because the money given to Humana each month from the government becomes Humana's money when it receives it. The Hospitals also contend that the network provider contracts do not support any inference that the government is responsible for Humana's breach of its contract with the Hospitals. The government essentially repeats the Hospitals' arguments, asserting that the Hospitals' contract claims against Humana are not claims seeking federal funds. According to the government, while Humana may, if found liable in this lawsuit, request reimbursement from the government under the TRICARE contract, Humana cannot insist that the Hospitals recast their claims and seek damages from the government.

We agree with the Hospitals and the government that the district court did not err in denying Humana's motion to dismiss or transfer the case to the Court of Federal Claims. In the Tucker Act, Congress waived the federal government's sovereign immunity but limited the jurisdiction of the Court of Federal Claims to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); United States v. Mitchell, 463 U.S. 206, 212 (1983). However, "[t]he Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must

identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (citing Mitchell, 463 U.S. at 216) (other citations omitted). This appeal turns on whether the Hospitals' breach of contract claim is a claim for money damages against the government so as to invoke the jurisdiction of the Court of Federal Claims. We agree with the district court and conclude that the proper defendant for the Hospitals' contract claims is Humana, not the government, and therefore that the Court of Federal Claims lacks jurisdiction over those claims.

We begin with the complaint. The complaint sets forth two claims: a breach of contract claim against Humana and a declaratory judgment claim against the government asserting that the TMA's March 10, 2000 Policy was invalid. Only the first claim, which is for money damages, is at issue in this appeal. The express language of count I, which is directed against Humana, states that "[t]his is an action for breach of contract against Humana." Complaint, at ¶ 41. The Prayer for Relief section of the complaint also makes clear that the Hospitals are seeking money damages from Humana for the alleged breach of contract. Id., at Prayer for Relief ¶ E. In addition, the Hospitals alleged that the breach of the network provider contracts by Humana occurred independently of the validity of the Policy Statement: "[r]egardless of the validity of the policy, its existence did not change or otherwise affect the contracts entered into between Humana and [the Hospitals]." Id., at ¶ 29. The unambiguous language of the complaint thus establishes that the Hospitals' contract claims are directed against Humana, not the government.

Further, there is no basis for Humana's allegations that "behind the facial allegations of [the] complaint" lie claims against the government for money damages. The network provider contracts are private agreements between the Hospitals and Humana. The government was not a party to those contracts, and the Hospitals have no direct relationship with the government. Moreover, Humana's reliance upon certain TRICARE policies as defenses against liability does not convert the Hospitals' contract claims against Humana into claims against the government.

In addition, that Humana may seek reimbursement from the government after a finding of liability in this case does not mean the government is the "real party in interest" on the Hospitals' contract claims. While the FI contracts included an indemnification clause stating that the United States would be considered the "real party interest" in disputes concerning FI contracts, the Prime Contract here does not contain such a provision. Thus, the proper defendant to the Hospitals' contract claims is Humana, not the government. In so holding, we do not address any interpretation of the provisions of the Prime Contract or assess the government's potential liability to Humana under the Prime Contract because those issues are not properly before us.

Humana contends that the government is the real party in interest on the Hospitals' contract claims, relying on Texas Peanut Farmers v. United States, 409 F.3d 1370 (Fed. Cir. 2005) and Consolidated Edison Co. of New York, 247 F.3d at 1378. Those cases do not provide the necessary support for its argument.

In Texas Peanut Farmers, we held that the proper defendant in a suit by peanut farmers for breach of their Multiple Peril Crop Insurance ("MPCI") policies was the Federal Crop Insurance Corporation ("FCIC"), the reinsurer of those policies, even

though the peanut farmers had named the United States as the defendant. 409 F.3d at 1371-72. We reasoned that the "MCPI itself plainly states that [the peanut farmers] are the contracting parties and the FCIC is the reinsurer." Id. at 1373. Here, unlike the insurance contract in Texas Peanut Farmers, the network provider contracts do not "plainly state" that the government is a reinsurer or otherwise liable for money damages resulting from Humana's breach of those contracts. Thus, the government was not the proper defendant on the Hospitals' breach of contract claims.

Our holding in Consolidated Edison Co. is also inapplicable to the question presented here of whether the government is the proper defendant in the first instance. In Consolidated Edison Co., the plaintiffs challenged the constitutionality of the Energy Policy Act of 1992 ("EPACT"), which required domestic nuclear facilities to pay thirty-two percent of the costs of decontaminating and decommissioning the government's uranium processing facilities. 247 F.3d at 1380-81. Before EPACT, the plaintiffs had contracted with the government for uranium enrichment services under a series of fixed-price agreements. Id. After making initial payments under EPACT, the plaintiffs brought two actions: an action against the government in the Court of Federal Claims seeking refunds of those payments, and an action in the district court for a declaratory judgment that EPACT was unconstitutional and for injunctive relief from future EPACT assessments. Id. at 1381.

We held that the plaintiffs' second action against the government in district court should be transferred to the Court of Federal Claims. Id. at 1386. We observed that the "[plaintiffs'] case for retrospective monetary relief before the Court of Federal Claims overlaps with its claims for prospective monetary relief before the district court," and that

05-1501                                    10

relief from the plaintiffs' "retrospective obligations will also relieve [them] from the same obligations prospectively." Id. at 1385. Here, unlike in Consolidated Edison Co., the Hospitals are not in privity of contract with the government and have not sought monetary relief from the government. Therefore, the district court did not err in denying Humana's motion to dismiss or transfer the case to the Court of Federal Claims.

Our holding is consistent with the Sixth Circuit's decision in Baptist Physician Hospital Organization v. Humana Military Healthcare Services, Inc., 368 F.3d 894 (6th Cir. 2004). In Baptist Physician Hospital, the Sixth Circuit held that Humana was potentially liable to medical providers under similar breach of contract claims, citing with approval the district court's rejection in this case of "Humana's argument that any liability for its breach of a provider contract is directly chargeable to the Treasury." Id. at 901. In that case, Humana did not move to transfer the case to the Court of Federal Claims, conceding that the providers' breach of contract claims were properly before the district court. We note, however, that because the agreements in Baptist Physician Hospital were different from the network provider contracts at issue here, that case is not controlling as to the district court's jurisdiction over the Hospitals' breach of contract claims against Humana.

Finally, we agree with the Hospitals and the government that the district court did not abuse its discretion in denying Humana's motion for reconsideration. The key issue there is whether there was an intervening change or development in controlling law that would compel dismissal or transfer of the Hospitals' breach of contract claims to the Court of Federal Claims. See Zinn v. GMAC Mortg., No. Civ. A. 1:05-CV-01747, 2006 WL 898179 (N.D. Ga. April 5, 2006) ("Motions for reconsideration are to be filed only

when 'absolutely necessary' where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."); Summit Med. Ctr. of Alabama, Inc., 284 F. Supp. 2d at 1355 ("[C]ourts have recognized three grounds justifying reconsideration: 1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or manifest injustice.").

In support of its May 5, 2005 motion for reconsideration, Humana pointed to "recent developments" in the case law, citing Britell v. United States, 372 F.3d 1370 (Fed. Cir. 2004) and Doe v. United States, 372 F.3d 1308 (Fed. Cir. 2004) for the proposition that claims for CHAMPUS/TRICARE benefits generally belong in the Court of Federal Claims. Reconsideration Decision, slip op. at 4 n.6. Those decisions are inapposite because neither case involved a factual situation, as here, in which the plaintiffs' claims against the government arose only under a private contract.

The plaintiff in Britell was a military dependent who was denied CHAMPUS reimbursement for the cost of an abortion. 372 F.3d at 1373. We held that we had jurisdiction to review her claim because Britell was a CHAMPUS beneficiary. Id. The plaintiff in Doe was also a military dependent who decided to terminate her pregnancy by abortion. Doe, 372 F.3d at 1310. However, instead of seeking money damages, she sought an injunction requiring TRICARE to authorize payment for her abortion. Id. at 1317. We held that we lacked jurisdiction to review her claim because she was not requesting reimbursement, but rather, equitable relief. Id.

Here, unlike the plaintiffs in Britell and Doe, the Hospitals are not CHAMPUS/TRICARE beneficiaries who are entitled to seek reimbursement directly

from the government. Rather, the Hospitals must seek payment from Humana pursuant to the private network provider contracts. The cases cited by Humana are not evidence of an intervening change in controlling law. Further, we discern no abuse of discretion in the district court's holding that "Humana has not established that evidence which it recently submitted compels the conclusion that [the district court does not have] subject matter jurisdiction . . . as to [c]ount I" and that "Humana has not shown that its motion must be granted to correct clear error or manifest injustice." Reconsideration Decision, slip op. at 4, 5. The district court therefore was within its discretion in denying Humana's motion for reconsideration.

## CONCLUSION

Because the Hospitals' contract claims are not claims for money damages against the government, the district court did not err in denying Humana's motion to dismiss or transfer the case to the Court of Federal Claims. The district court also did not abuse its discretion in denying Humana's motion for reconsideration. The decision of that court is therefore

## AFFIRMED.