UNITED STATES, Plaintiff–Appellant,

v.

COUNTY OF COOK, ILLINOIS, Edward J. Rosewell, County Treasurer and County Collector of the County of Cook, Illinois, David D. Orr, Clerk of the County of Cook, Illinois, and Thomas C. Hynes, County Assessor of the County of Cook, Illinois, Defendants–Appellees.

No. 98–1181.

United States Court of Appeals, Federal Circuit.

March 11, 1999.

---

Luke Levasseur, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for plaintiff-appellant. With him on the brief were David M. Cohen, Director and Jeanne E. Davidson, Assistant Director.

Mark R. Davis, O'Keefe, Ashenden, Lyons & Ward, Chicago, Illinois, argued for defendants-appellees.

Before MAYER, Chief Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

The United States appeals from the decision of the United States District Court for the Northern District of Illinois transferring Counts III and V of Cook County's counterclaim to the United States Court of Federal Claims. *See United States v. County of Cook, Illinois,* No. 94–C–7068, at 3, 1997 WL 639049 (N.D.Ill. Oct. 3, 1997). Because 28 U.S.C. § 1500 bars jurisdiction in the Court of Federal Claims over the transferred claims, we reverse.

## BACKGROUND

This lengthy litigation arises from Cook County's attempts to tax two federal office buildings located within the county. While detailed mastery of the facts and procedural history are not necessary to understand and resolve the legal issues presented in this appeal, we briefly set forth those details necessary to put the present dispute into context.

The office buildings at issue were constructed in the early 1970s pursuant to 40 U.S.C. § 602a, which authorized the United States' Administrator of General Services to enter into installment purchase contracts for the acquisition of federal buildings. The statute permitted state and local taxation of § 602a property until the date that title to the buildings formally passed to the government. *See* 40 U.S.C. § 602a(d) (1994). The title to both buildings did not pass to the United States until 1993.

In 1979, the Cook County Tax Assessor assessed property taxes against the buildings for certain prior tax years and eventually foreclosed on and sold the buildings when the United States failed to pay the taxes. The United States filed suit in federal district court seeking a declaration that the buildings were exempt from state taxation and an order vacating the sales of the buildings. On appeal, a panel of the Seventh Circuit affirmed the district court's declaration that the buildings were not subject to taxation because Illinois law exempted from local taxation property "that is being purchased by a governmental body under an installment contract. . . ." *See United States v. County of Cook, Illinois,* 725 F.2d 1128, 1130 (7th Cir. 1984) (quoting Ill.Rev.Stat. ch. 120, ¶ 500.9a), *overruled-in-part by United States v. Hynes,* 20 F.3d 1437 (7th Cir.1994) (en banc).

In response to the Seventh Circuit's decision and in light of § 602a(d), the Illinois legislature in 1984 amended its statute to permit taxation when the "governmental body has permitted itself" to be taxed. *See* Ill.Rev.Stat. ch. 120, ¶ 500.9a (West 1992) (now codified at 35 Ill. Comp. Stat. 205/19.9a). Cook County thereafter assessed taxes against the buildings for certain tax years subsequent to 1984. The United States again filed suit, seeking a declaration that the amended statute was unconstitutional under the Supremacy Clause. The Seventh Circuit, sitting en banc, disagreed with the United States and held that the taxes had been constitutionally levied under the amended statute, in the process overruling a portion of the earlier panel's decision. *See United States v. Hynes,* 20 F.3d 1437, 1441 (7th Cir.1994) (en banc) ("We therefore overrule *County of Cook* to the extent that taxing federal § 602a property while exempting similar property of state and local governmental bodies would be unconstitutionally discriminatory and that § 602a(d) is not a

sufficient consent to such discriminatory taxation.").

After the Seventh Circuit's decision in *Hynes,* and after continued non-payment of the taxes, Cook County amended its pleadings in a related state court action to seek the issuance of tax deeds on the buildings in order to facilitate their sale. This prompted the United States to file the instant action in the Northern District of Illinois. This action sought declaratory and injunctive relief to prohibit the foreclosure sales of the buildings, and also sought a declaration that the United States is not liable for interest and penalties incurred with respect to the unpaid taxes.

Cook County filed a counterclaim constituting five separate counts, four of which are relevant here.[1] Count II sought taxes for tax years 1985–93, with interest. Count III sought "just compensation" and alleged that the United States' "repudiation" of its obligation to pay its taxes in 1985–93 constituted a taking actionable under the Fifth Amendment; this count also sought interest.[2] Counts IV and V were largely duplicative of counts II and III, respectively, except that they applied to tax years 1977–84.[3]

Both parties moved for summary judgment. *See United States v. County of Cook, Illinois,* No. 94–C–7068 (N.D.Ill. Sept. 30, 1997). The district court, inter alia, granted the United States' motion for summary judgment and in the process dismissed all of Cook County's counterclaims, reasoning that Cook County could not assert counterclaims against the United States in district court without violating principles of sovereign immunity. See id. at 28–29 (citing *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940) and *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940)); *United States Fidelity & Guaranty,* 309 U.S. at 512, 60 S.Ct. 653 ("In [*Shaw*] we hold that

1. Count I sought payment of the principal amount owing for tax years 1985–93. The United States paid this money into escrow in the district court. As stated by Cook County, this payment "mooted" Count 1. Cook County's Brief at 9.

2. The escrow payment also "mooted" Counts II and III to the extent that they sought payment of the taxes, leaving only the interest and penalties in dispute. Cook County's Brief at 10.

3. Cook County alleged that Counts IV and V were not barred as res judicata by the Seventh Circuit's 1984 panel decision.

cross-claims against the United States are justiciable only in those courts where Congress has consented to their consideration."). The court also granted the United States the declaratory and injunctive relief it sought, holding that § 602a did not waive the United States' sovereign immunity against state foreclosure sales or penalties and interest accruing on taxes payable thereunder. *See United States v. County of Cook, Illinois,* No. 94–C–7068, at 22–27 (N.D.Ill. Sept.30, 1997).

Cook County thereafter moved the district court to amend its judgment and to transfer Counts III and V to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 (1994). The district court granted Cook County's request to transfer and otherwise reaffirmed the summary judgment for the United States on its claims and on the counterclaims that were not transferred. *See United States v. County of Cook, Illinois,* No. 94–C–7068, at 3 (N.D.Ill. Nov. 14, 1997). Cook County later appealed the entry of summary judgment against it to the Seventh Circuit, which reversed and reinstated Cook's claims. *See United States v. County of Cook, Illinois,* 167 F.3d 381 (7th Cir.1999).

The only issue before this court is the propriety of the district court's transfer order. We have jurisdiction to review this order pursuant to 28 U.S.C. § 1292(d)(4)(A) (1994).

## DISCUSSION

■ "We review a district court's decision to transfer a case to the Court of Federal Claims de novo because it is jurisdictional." *James v. Caldera,* 159 F.3d 573, 578 (Fed. Cir.1998) (citing *Benderson Dev. Co. v. United States Postal Serv.,* 998 F.2d 959, 962 (Fed.Cir.1993)).

The United States contends that the district court erred in transferring to the Court of Federal Claims Counts III and V of Cook County's counterclaim, and it makes two arguments in support of this contention. The United States first argues that 28 U.S.C. § 1631 (1994) only authorizes the transfer of an entire "civil action," not less than all of the claims of an action. In the alternative,

the United States argues that, even if "bifurcation" of the claims in a civil action is permissible under 4F 1631, jurisdiction in the Court of Federal Claims over the transferred claims is still barred under 28 U.S.C. § 1500 (1994). This second argument relies on the fact that non-transferred Counts II and IV, which the United States asserts are no different in substance from transferred Counts III and V, were "pending" in another court for purposes of § 1500 at the time of the transfer.

Cook County responds that the transfer order did not "bifurcate" the case because non-transferred Counts II and IV had been dismissed. Cook County therefore contends in effect that its "civil action" had been narrowed to include only those claims that were transferred, and that the transfer was in compliance with the statute. Cook County responds further that § 1500 is inapplicable in assessing the propriety of a transfer under § 1631, and, regardless, that § 1500 does not preclude jurisdiction because transferred Counts III and V seek a different remedy from non-transferred Counts II and IV.

### A. *28 U.S.C. § 1631*

■ We address the United States' § 1631 argument first. That section states in relevant part as follows:

> *Transfer to cure want of jurisdiction:* Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

28 U.S.C. § 1631 (1994).

Whether § 1631 permits a court to transfer some but not all claims in a "civil action" is an issue that has not been uniformly resolved by the circuit courts. The Court of Appeals for the District of Columbia has interpreted § 1631 according to its plain language to authorize only the transfer of an entire action, not individual claims within an

action. *See Hill v. United States Air Force,* 795 F.2d 1067, 1070 (D.C.Cir.1986) ("Section 1631 directs a court to transfer an 'action' over which it lacks jurisdiction, rather than an individual claim."). In contrast, the Court of Appeals for the Tenth Circuit has concluded that § 1631 allows for the transfer of some claims in an action when the district court "clearly indicates" an intention to create two separate actions, for example, through the application of Rule 21[4] of the Federal Rules of Civil Procedure. *See Federal Deposit Ins. Corp. v. McGlamery,* 74 F.3d 218, 222 (10th Cir.1996) (finding that the district court's transfer order evinced such an intention); *see also Miller v. United States,* 753 F.2d 270, 275–76 (3rd Cir.1985) (allowing transfer of part of an appeal to the Federal Circuit under § 1631, but without an express analysis of the propriety of doing so).

No prior decisions of our court have squarely addressed the issue whether § 1631 permits the transfer of less than all of the claims of an action, although in *James v. Caldera,* 159 F.3d 573 (Fed.Cir.1998), we affirmed an order of the district court that transferred only certain claims to the Court of Federal Claims. However, *James* did not decide or even discuss the present issue, presumably because it was not raised by either party. Similarly, in *Galloway Farms, Inc. v. United States,* 834 F.2d 998 (Fed.Cir. 1987), we stated that "Courts have exercised their section 1631 transfer powers but not usually, or preferably, in the form of bifurcation of claims," but ultimately declined to transfer any of the claims in the action on the ground that they were "frivolous." *See Galloway,* 834 F.2d at 1001. This statement in *Galloway* did not reflect any investigation into the text, legislative history, or purpose of § 1631 and, in any event, constituted mere dictum given the court's disposition of the transfer request on the ground of frivolousness. Moreover, in *Cooper v. Department of the Navy,* 108 F.3d 324 (Fed.Cir.1997), a district court transferred a four-count complaint to this court. Although we affirmed one count that related to a decision made by the Merit System Protection Board, a deci-

sion over which we have appellate jurisdiction, *see* 28 U.S.C. § 1295(a)(9) (1994), we transferred the remaining counts over which we did not have jurisdiction back to the district court. See Cooper, 108 F.3d at 327. However, like *James, Cooper* lacks an analysis of the import of the "civil action" requirement of § 1631. We therefore cannot read *James, Galloway,* or *Cooper* as setting forth an explicit rule as to whether § 1631 allows for the transfer of less than all of the claims of an action. *See National Cable Television Ass'n v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1581 (Fed.Cir.1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."). Without binding precedent to guide us, we address this issue *de novo.*

Our analysis of the question whether § 1631 permits a court to transfer less than all claims in an action begins, as it must, with the language of the statute. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). In this regard, we recognize the United States' point that the language of § 1631 refers to the transfer of a "civil action," not "claims" underlying such an action. *See also* Fed.R.Civ.P. 2 ("There shall be one form of action to be known as 'civil action.'"); Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."); Fed R. Civ. P. 8(e)(2) (noting that a complaint can "state as many separate claims ... as the party has."). However, we do not view such language as dispositive of Congress's intention concerning "bifurcation" of an action under § 1631. Rather, we find Congress's intent more clearly expressed in the text of a different statute, *viz.,* the statute that provides this court with jurisdiction

---

**4.** Rule 21 states in relevant part that "[a]ny claim against a party may be severed and proceeded with separately."

over this case. That statute provides in relevant part that:

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States ... granting or denying, *in whole or in part*, a motion to transfer *an action* to the United States Court of Federal Claims under section 1631 of this title.

28 U.S.C. § 1292(d)(4)(A) (1994) (emphasis added). In this statute, Congress clearly recognized that a transfer of an action under § 1631 may be granted "in whole or in part." While this provision does not expressly provide for such a transfer, we understand it to have that meaning. Otherwise our review jurisdiction would lack substance. We therefore read § 1292(d)(4)(A) as reflective of Congress's intention in § 1631 to permit the transfer of less than all of the claims in an action.

This reading of § 1631 promotes the policies that Congress intended to foster through its enactment of that section. As both parties point out, § 1631 was designed to remedy the situation in which a litigant has mistakenly filed an action in a court that lacks jurisdiction. In Congress's words:

> Because of the complexity of the Federal court system and of special jurisdictional provisions, a civil case may on occasion be mistakenly filed in a court—either trial or appellate—that does not have jurisdiction. By the time the error is discovered, the statute of limitations or a filing period may have expired. Moreover, additional expense is occasioned by having to file the case anew in the proper court.

S.Rep. No. 97–275, at 30 (1981).[5] Because suits against the United States may be brought in the district courts in some circumstances and in the Court of Federal Claims in other circumstances, it is likely that some litigants will mistakenly file some claims in a court that lacks jurisdiction. Section 1631 was clearly intended by Congress to remedy this problem through the simple mechanism of a transfer to the court of proper jurisdiction. The United States suggests no logical reason why this remedy should not be allowed on a claim-by-claim basis. It would indeed be a curious result that a district court could transfer an action under § 1631 containing a single claim over which it lacked jurisdiction but could not transfer that claim if the claimant made an additional claim in his action over which the court did have jurisdiction. We see no reason to deny the remedial benefit of § 1631 in this circumstance merely because some of the claims were properly lodged in the transferor court. Instead, the logical result, one which promotes the policy of § 631 of aiding litigants mistaken as to the proper forum for filing certain claims, is to transfer the claims over which the transferor court lacks jurisdiction. This result is one which our previous cases have implicitly recognized as proper. *See James, Cooper, supra.* In light of § 1292(d)(4)(A)'s "in whole or in part" requirement, we now make this result explicit and hold that § 1631 allows for the transfer of less than all of the claims in a civil action to the Court of Federal Claims. The district court's transfer order was therefore not erroneous on this basis.[6]

### B. *28 U.S.C. § 1500*

■ We next turn to the United States' argument that § 1500 precludes jurisdiction in the Court of Federal Claims over transferred counts III and V. That section reads in relevant part as follows:

> *Pendency of claims in other courts:* The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court

---

5. Congress also explained that prior to the enactment of § 1631, "[a] litigant's main protective device ... [was] the wasteful and costly one of filing in two or more courts at the same time. This put[ ] increased burdens on the courts as well as on the parties." S.Rep. No. 97–275, at 11 (1981).

6. Because of our conclusion that § 1631 allows for the transfer of less than all of the claims in a given action, we need not address the parties' arguments concerning the relevance of the fact that Counts II and IV were dismissed from the district court action and that the dismissal was appealed to (and has subsequently been reversed by) the Seventh Circuit.

any suit or process against the United States. . . .

28 U.S.C. § 1500 (1994).

Counts III and V were transferred to the Court of Federal Claims pursuant to § 1631, which provides that the action brought on those counts "shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. Accordingly, through the operation of § 1631, we must consider that Claims III and V were filed in the Court of Federal Claims simultaneously with the filing of Claims II and IV in the district court.

█ That these claims were simultaneously filed is significant to a § 1500 analysis because jurisdiction in the Court of Federal Claims under that section "depends upon the state of things at the time of the action brought." *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citations and quotation omitted). Accordingly, an issue presented for our consideration is whether Counts II and IV were "pending" in the district court at the time that Counts III and V were simultaneously filed in the Court of Federal Claims.

Whether claims simultaneously filed are "pending" with respect to one another under § 1500 is an issue that has not been squarely addressed by this court or its predecessors. The parties argue, but dispute, the relevance of *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943 (1965),[7] to this issue. In *Tecon,* the Court of Claims held that the filing of a claim against the United States in district court subsequent to the filing of the same claim in the Court of Claims did not divest that court of jurisdiction. The court concluded that

the only reasonable interpretation of [§ 1500] is that it serves to deprive this

court of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court.

*Tecon,* 343 F.2d at 949 (emphasis in original). While this language suggests that simultaneously filed claims are not "pending" for purposes of § 1500, the opinion later notes that the facts of the case did not present the situation of simultaneously filed claims, and cites two cases in which the Court of Claims denied jurisdiction over claims which were simultaneously filed in the district courts. See *id.* at 950 & n. 4 (citing *British Am. Tobacco Co. v. United States,* 89 Ct.Cl. 438 (Ct.Cl.1939) and *National Cored Forgings Co. v. United States,* 132 Ct.Cl. 11, 132 F.Supp. 454 (1955)). However, these Court of Claims opinions lack an express analysis of whether a claim simultaneously filed in the district courts is "pending" for purposes of § 1500. Furthermore, *Tecon's* fact situation renders the above quotation dictum with respect to the simultaneous filing issue.

Our independent review of the case law has not revealed any precedent squarely on point to whether claims filed simultaneously in the district court and the Court of Federal Claims are "pending" for purposes of § 1500. Finding neither the language of the statute nor the legislative history enlightening, we endeavor to further the established policies of § 1500, which are "to force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," *UNR,* 962 F.2d at 1018 (citing the legislative history of the original version of § 1500, 81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868)), and to "protect the United States from having to defend two lawsuits over the same matter simultaneously," *id.* at 1019; *see also National Cored Forgings,* 132

---

7. *Tecon,* and several other cases, were expressly overruled by this court in *UNR Industries, Inc. v. United States,* 962 F.2d 1013, 1023 (Fed.Cir. 1992) (en banc), *aff'd sub. nom Keene v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). The Supreme Court affirmed *UNR* in *Keene,* but noted that we did not need to overrule precedent concerning fact situations which were not before us in *UNR.* See *Keene,* 508 U.S. at 215–16, 113 S.Ct. 2035. Accordingly, in *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545 (Fed.Cir.1994) (en banc), we stated that "anything we said in *UNR* regarding the legal import of cases whose factual bases were not properly before us was mere *dictum,* and therefore we will not accord it *stare decisis* effect." *Loveladies,* 27 F.3d at 1549 (emphasis in original).

F.Supp. at 458 ("The obvious and declared purpose of [§ 1500] was to require an election between a suit in this court against the United States and one brought" in the district courts) (citing *Matson Navigation Co. v. United States,* 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1931)). These policies are promoted by precluding jurisdiction in the Court of Federal Claims over claims which had been previously filed in the district courts, and nothing suggests that these policies would not similarly be promoted by precluding jurisdiction in the simultaneous filing context. Accordingly, we hold that the "filing" of the same claim simultaneously in the district court and the Court of Federal Claims by operation of § 1631 deprives the latter court of jurisdiction pursuant to § 1500. Accordingly, Counts II and IV were "pending" in the district court for purposes of § 1500 at the time that Counts III and V were simultaneously filed in the Court of Federal Claims.[8]

 The only remaining question for our resolution is whether the claims filed in the two fora were indeed the same for purposes of § 1500. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir.1994) (en banc). This test is applied without consideration to the legal theory underlying the claim. *See British Am. Tobacco Co. v. United States,* 89 Ct.Cl. 438, 440, 1939 WL 4266 (Ct.Cl.1939) ("We think it clear that the word "claim" as used in [the predecessor statute to § 1500] has no reference to the legal theory upon which a claimant seeks to enforce his demands ....") (cited with approval by *Keene,* 508 U.S. at 213–14, 113 S.Ct. 2035). As we noted in *Loveladies,* in a discussion of the facts of *British American Tobacco:*

The plaintiff [in *British American Tobacco* ] brought suit against the government in district court under a tort theory, and in the Court of Claims under a contractual theory. In both courts plaintiff sought a money judgment. The Court of Claims held that § 1500 barred the claim before it. It made no difference that the two suits were based on different theories; the plaintiff had only one claim for money based on the same set of facts.

*Loveladies,* 27 F.3d at 1551; *see also Keene,* 508 U.S. at 213–14, 113 S.Ct. 2035 (rejecting the notion that only claims presenting the same legal theory were within the scope of § 1500's jurisdictional bar: "[T]his reinterpretation ... would ... render[ ] the statute useless, in all or nearly all instances, to [a]ffect the very object it was originally enacted to accomplish."). The facts of *British American Tobacco* are analogous to those before us and warrant the conclusion that Cook County's Counts II and III (and Counts IV and V) are the same "claim" for purposes of § 1500. Both counts clearly arise out of the same operative facts, and both counts seek the same relief—money with interest, albeit under different theories (tax law versus a Fifth Amendment takings theory).

Because the non-transferred district court claims were "pending" at the time that the action on the transferred claims was effectively filed in the Court of Federal Claims, and because those claims were the same for purposes of § 1500, that statute precluded jurisdiction over the transferred claims in the Court of Federal Claims. The district court therefore erred in ordering the transfer of Counts III and V to the Court of Federal Claims.

## CONCLUSION

The district court erred in transferring Counts III and V to the Court of Federal

---

8. It is worth noting that § 1500 is not implicated when *all* of the claims in an action are transferred to the Court of Federal Claims pursuant to § 1631. Section 1631 mandates that the transferred claims be treated as if they were filed in the transferee court at the time they were filed in the transferor court. Therefore, when all claims in an action are transferred, no claims are pend-

ing in the district court that could preclude jurisdiction over the transferred claims in the Court of Federal Claims pursuant to § 1500. In addition, § 1500 is not implicated when claims based on differing operative facts or seeking differing remedies are filed in district court and a transfer is made of claims properly belonging in the Court of Federal Claims.

Claims because 28 U.S.C. § 1500 precluded jurisdiction over those claims given the pendency of Counts II and IV before the district court. Accordingly, the decision of the district court is

*REVERSED.*